# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 5, 2010 Session

## CHRISTINA ALTICE v. NATS, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 04-678-I      Ellen H. Lyle, Chancellor**

_____

**No. M2009-00659-COA-R3-CV - Filed February 25, 2010**

_____

Judgment creditor sued defendants to collect a judgment against a defunct nonprofit corporation, claiming defendants were the alter egos of the defunct corporation.  In a prior appeal, this court instructed the parties to focus on whether certain transactions were or were not loans.  If they were loans, then the plaintiff could not prove her case to make the defendants responsible for the judgment against the defunct corporation.  The trial court found that the transactions were loans.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Thomas J. Hendrickson III, Nashville, Tennessee, for the appellant, Christina Altice.

Stanley A. Kweller, Nashville, Tennessee, for the appellee, Mary Friddell.

Charles J. Friddell, Nashville, Tennessee, Pro Se.

### OPINION

This is the second appeal of the trial court's rulings in the instant case.  The facts were summarized in our first opinion as follows:

> The genesis of this matter lies in a prior federal lawsuit. A recitation of the facts of that litigation is necessary to gain a full understanding of the current case. In 1998, Christina Altice, a former student, sued Nursing Assistant Training Specialists, Inc., a not-for-profit corporation, in the United States District Court for Middle Tennessee.  In late March 1999, Altice filed

a motion to compel Nursing Assistant Training Specialists, Inc. to respond to discovery. No response to this motion was filed. On March 31, 1999, Nursing Assistant Training Specialists, Inc. executed an agreement with NATS, Inc. ("NATS") to sell its assets to NATS for $7,295.00. The District Court subsequently ordered Nursing Assistant Training Specialists, Inc. to respond to Altice's discovery requests. This did not occur, so the court entered a default judgment against Nursing Assistant Training Specialists, Inc. on May 20, 1999. In the meantime, on April 21, 1999, NATS filed a charter with the Tennessee Secretary of State as a for-profit corporation. Nursing Assistant Training Specialists, Inc. was administratively dissolved in January 2000. After an unexplained delay of almost four years, the District Court entered a judgment awarding Altice $102,820.00 against Nursing Assistant Training Specialists, Inc. on February 18, 2003. This judgment was domesticated by order of the Davidson County Chancery Court on February 17, 2004.

The lawsuit before this court was filed against NATS on March 5, 2004. It alleges that NATS is an alter ego of Nursing Assistant Training Specialists, Inc. and was formed to fraudulently receive the assets of Nursing Assistant Training Specialists, Inc. in order to defeat creditors. The suit seeks to hold NATS responsible for the judgment against Nursing Assistant Training Specialists, Inc. In May 2004, the Chancellor allowed the complaint to be amended to add Mary Friddell and the Estate of Rosa Mary Humphreys as defendants. They were alleged to be alter egos of both Nursing Assistant Training Specialists, Inc. and NATS. A request to add Charles Friddell as a defendant was denied. A second request to add Charles Friddell as a defendant was denied on July 22, 2004. In September 2006, Altice renewed her motion to add Charles Friddell as a defendant, but that motion was apparently never ruled on due to the granting of summary judgment in favor of the defendants. In granting the motion for summary judgment, the Chancellor determined that there were no genuine issues of material fact and "no indications of badges of fraud, deception, or malice by these Defendants that would give rise to the Court piercing the corporate veil." Furthermore, the court specifically found that "there is no evidence to create a genuine issue of material fact as to whether or not these Defendants were the alter ego of Nursing Assistant Training Specialists, Inc. or that they undertook any actions to harm or defraud the creditors of the same."

In its order denying the Motion to Alter or Amend, the court made further findings. The court concluded that "the Plaintiff can not show a material breach of fiduciary duty by the Defendants and that there was no zone

of insolvency caused by any of the acts of the Defendants in this cause." It further found that the defendants justified their transactions with the corporation and that the actions of the defendants regarding the making and repaying of loans were justified and conducted in good faith. Finally, the court found that any contradictions in the defendants' testimony were not material.

*Altice v. NATS, Inc.*, No. M2007-00212-COA-R3-CV, 2008 WL 1744571, at *1-2 (Tenn. Ct. App. Apr. 15, 2008) (footnotes omitted).

This court upheld the trial court's grant of summary judgment to NATS and to the Estate of Rosa Mary Humphreys. We reversed the trial court's grant of summary judgment to Mary Friddell and the trial court's denial of the motion to add Charles Friddell as a defendant. The case was remanded for further proceedings.

Upon the return of the case to the trial court, all parties focused on the following passage from the appellate opinion as the salient topic for further proceedings:

> Much of the evidence in this case is uncontroverted. We cannot, however, agree with the Chancellor that there are no genuine issues of material fact or that the contradictions in testimony of the Friddells were not material. As this case has developed, the central matter of controversy relates to the so-called loans for which Charles and Mary Friddell were reimbursed. If the transactions were indeed loans, then it would appear that there was no fraud perpetrated on Altice, no diversion of corporate assets, and no material failures to maintain arms length relationships. If these transactions were not loans, however, then the payments take on an entirely different and more nefarious character which would likely influence a court's evaluation of the *Allen* factors in favor of piercing the corporate veil.

*Id*. at *4. A hearing was held on February 10, 2009. At the close of Altice's proof, the defendants made a motion to dismiss under Tenn. R. Civ. P. 41.02, which was granted.

Standard of Review

A Tenn. R. Civ. P. 41.02 motion to dismiss "evaluates the strength of the plaintiff['s] case." *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979).

> When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been

presented. If a plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if the plaintiff has shown no right to relief on the facts found and the applicable law.

*Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007) (citations omitted). The review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Tenn. R. App. P. 13(d): findings of fact are accorded a presumption of correctness unless the evidence preponderates otherwise. *Id*. Conclusions of law receive de novo review with no presumption of correctness. *Id*.

Analysis

The plaintiff called both Mary Carrol Friddell and Charles Fridell as witnesses. Based on their direct, cross, redirect and recross examination, the trial court made a number of findings of fact, including:

1.  The transactions at issue were loans by Mary Friddell and Charles Friddell to Nursing Assistant Training Specialists, Inc.

2.  The testimony of both Mary and Charles Friddell was credible. Each was straight forward and direct in their testimony and not evasive. In particular, the court found that Mary Friddell's explanation of her contradictory deposition testimony as being due to the lapse of time, nervousness and emotions regarding her deceased mother was credible.

3.  The Friddells put more money into the corporation than they took out, which makes it probable that the payments made to the Friddells were repayments of loans or advances.

4.  The payroll audit by the taxing authorities did not conclude that the Friddell's were employees. From this, the court could reasonably infer that the audit established the payments to the Friddells were repayments of advances or loans.

5.  The Friddells did not intend to defraud Ms. Altice.

These findings, which are supported by a preponderance of the evidence, led the court to conclude that "it is not appropriate under these circumstances to pierce the corporate veil to require either Mary Friddell or Charles Friddell to be responsible for any debts of the corporation known [as] Nursing Assistance Training Specialist, Inc. [sic ]."

Altice contends that the failure to observe corporate formalities, especially the lack of corporate resolutions establishing the loans, makes it appropriate to pierce the corporate

veil. As a reviewing court, we cannot determine that it is appropriate to do so under the facts of this case.

The trial court carefully observed the witnesses and expressly found them to be credible. "We give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). Altice received her day in court and did not produce any evidence of wrongdoing on the Friddells' part other than a failure to observe some corporate formalities. That alone is not enough upon which to hang her hat. When the transactions were proved to be loans, and there is no evidence to the contrary, Altice lost the ability to show such misuse of the corporation by the Friddells as would justify holding them responsible for the corporation's debts. As we said in our earlier opinion, "If the transactions were indeed loans, then it would appear that there was no fraud perpetrated on Altice, no diversion of corporate assets, and no material failures to maintain arms length relationships." *Altice*, 2008 WL 1744571, at *4. We continue to adhere to that view.

The trial court's decision is affirmed. Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE